MARY ANN FOSTER, APPELLANT, v. DAVID HAWLEY AND OTHERS, RESPONDENTS.

*Concubinage — change of, into matrimony — evidence of.*

A cohabitation, illicit in its origin, is presumed to continue to be of that character unless the contrary be proved, and cannot be transformed into matrimony by evidence which falls short of establishing the fact of an actual contract of marriage. Such contract may be proved by circumstances, but they must be such as to exclude the inference or presumption that the former relation continued, and satisfactorily prove that it had been changed into that of actual marriage by mutual consent.

The presumption of a contract of marriage cannot be raised when the direct consequence of it would be to involve both parties in the crime of bigamy.

APPEAL from an order of the surrogate of Westchester county, made in the course of the proceedings to prove the will of Isaac M. Singer, denying the application of Mrs. Mary A. Foster to be allowed to intervene in the proceedings and contest the probate of his will on the ground that she was his widow.

In 1830, Isaac M. Singer married, at Palmyra, New York, Catharine Maria Haley. They had two children born to them and lived together until 1836. While Singer was on one of his theatrical rounds he met, at Baltimore, in 1836, Mary Ann Sponsler (the plaintiff). He left Baltimore and went to New York, whither she followed him, and although she knew he then had a wife living, cohabited with him, traveling about the country with him, taking such names as he assumed and after his prosperity (arising from his invention of a sewing machine) his real name of Singer. She had ten children by him. In 1860, or about twenty-four years afterward, Singer obtained a divorce from his wife and continued to cohabit with the plaintiff for about six months thereafter, when he separated from her. Afterward, in about 1861, she commenced a suit for divorce. No decree was had therein, but Singer settled the matter pecuniarily with the plaintiff, and in 1862 the plaintiff married one Foster. Subsequently (June 13, 1863) Singer married the woman whom he recognized in his will as his wife, by whom he had six children, left the country and died in England in 1875. On the probate of his will, the plaintiff claimed to intervene as his wife and widow, and the question having been tried as a preliminary issue, the surrogate made his decision and order against the plaintiff, January 10, 1876, from which she appealed to this court.

It was claimed that the commencement of the illegal cohabitation between the plaintiff and Singer was based on a promise by him that if she would live with him as his wife, as soon as he should be able to procure a divorce from the woman who claimed to be his wife, he would marry her; that subsequent cohabitation after such divorce was obtained was a ratification of their marital relation, and evidence that they consented to be man and wife.

*R. W. Van Velt,* for the appellant. The twenty-four years matrimonial recognition and cohabitation of the parties, followed by the

six months deliberate ratification and confirmation of their marital relationship, during which no disqualification whatever on the part of either existed, furnished absolute and conclusive evidence that they consented to be man and wife.

Matrimonial cohabitation, general repute, public acknowledgment, private admissions, a judicial decision, a solemn agreement, confirmed by partial performance by the testator, leave no ground whatever on his part for a denial of consent. Under all the authorities, English and American, the marriage is made out. (*Cunningham* v. *Cunningham*, Dows. Par. R., Vol. 2, 483; *McAdam* v. *Walker*, 1 Dow., 148; *Fenton* v. *Reed*, 4 Johns., 51; *Jackson* v. *Claw*, 18 id., 345; *Jackson* v. *Winne*, 7 Wend., 47; *Canjolle* v. *Ferrie*, 26 Barb., 178; *The People* v. *Humphrey*, 7 Johns., 314; *Rose* v. *Clark*, 8 Paige, 574; *Cheney* v. *Arnold*, 15 N. Y., 345; *In the Matter of Taylor*, 9 Paige, 611; *Clayton* v. *Wardell*, 4 Com., 230; *O'Gara* v. *Eisenlohr*, 38 N. Y., 296; *Campbell* v. *Campbell*, L. R. [2 Scotch and Divorce Cases], 182.)

*James C. Carter* and *John K. Porter*, for the respondents. The prime requisite to a valid marriage under our law is the interchange between the parties of a mutual present consent to take each other as husband and wife. This consent is of itself fully sufficient; and for it there is no substitute or equivalent. (*Clayton* v. *Wardell*, 4 N. Y., 230; *Fenton* v. *Reed*, 4 Johns.; *Queen* v. *Miller*, 10 Cl. & Fin.; 1 Bishop on Mar. and Div., §§ 227, 228.) The modes of proving the existence of such consent are various. But they should never be confounded with the consent itself, which is always the same. (Lord CHELMSFORD, in *Shedden* v. *Patrick*, L. R. [1 H. L. Pr. and Div.], 540, 541; 1 Bishop on Mar. and Div., §§ 246, 247.) Proof of cohabitation as husband and wife does not constitute marriage. It may, in some cases, be evidence of marriage. It can never be any thing more. " *Consensus, non concubitus, facit nuptias* " is the universally received maxim. (*Shedden* v. *Patrick, ubi supra; Letters* v. *Cady*, 10 Cal., 583; *Jackson* v. *Winne*, 7 Wend., 47; *Cheney* v. *Arnold*, 15 N. Y., 345; *Duncan* v. *Duncan*, 10 Ohio State, 181.) If the agreement is not one of present consent to accept each other as husband and wife, but is *per verba de futuro*, looking to a marriage at some future time, it not only fails to prove

actual marriage, but, by its very terms, excludes any such conclusion. (Lord COTTENHAM in *Stewart* v. *Menzies*, 2 Rob. App. Cases, 547, 590; *Cheney* v. *Arnold*, 15 N. Y.)

GILBERT, J.:

We cannot assent to the proposition put forth, in behalf of the appellant, that the illicit relation which she formed with Singer, assuming that it was formed on the faith of his promise to make her his wife whenever the impediment of his previous marriage should have been removed, was changed into matrimony merely by the removal of that impediment and their continuance of the same mode of life as theretofore. On the contrary, we think that it was incumbent on Mrs. Foster to show that something was done, after such impediment had been removed, which in fact constituted a marriage between them, and that there was a failure of proof on that point. A concubine cannot acquire the rights of a wife by survivorship. The marriage relation, however formed, is a sacred one, and sound public policy requires that its sanctity be preserved inviolate. It is quite apparent that if married persons were permitted to make valid executory promises of future marriage with third persons this policy would be at once subverted, and the practical evils of polygamy would receive the sanction of law. The question, therefore, is one of fact to be determined by the application of legal rules to the evidence in the case. It is unnecessary to go over that evidence in detail. It is undisputed that the relation between Singer and the appellant was illicit in its origin. It began in 1836 when Singer had a wife living. It was voluntarily entered into by Mrs. Foster, with full knowledge of that fact, and so continued until 1860, a period of nearly twenty-four years, when Singer obtained a divorce from his wife. That relation was none other than an illegal and adulterous one. A valid marriage between the parties to it, prior to such divorce, was not possible. The presumption of law is, that a cohabitation which was illicit in its origin continues to be of that character throughout its duration, unless the contrary be proved. (*Clayton* v. *Wardell*, 4 N. Y., 230; *Caujolle* v. *Ferrié*, 23 id., 106; *O'Gara* v. *Eisenlohr*, 38 id., 296; *Cunningham* v. *Cunningham*, 2 Don. P. C., 481; *Lapsley* v. *Grierson*, 1 H. L. Cases, 498; G. C., 8 Scotch Sess. Cases [3d

series], 47.) The only evidence to which we can give credence going to rebut that presumption in this case, consists of the same course of conduct between Singer and Mrs. Foster as that which preceded Singer's divorce, namely, cohabitation, and acts proving that Singer recognized Mrs. Foster and held her out to the world as his wife, coupled with his promise to marry her when he should have obtained a divorce from his wife, made at the commencement of the adulterous connection between them; that, we think, is not sufficient. The concubinage which existed for so long a period cannot be transformed into matrimony by evidence which falls short of establishing the fact of an actual contract of marriage. Such a contract, it is true, may be proved by circumstances, but they must be such as exclude the inference or presumption that the former relation continued, and satisfactorily prove that it had been changed into that of an actual marriage by mutual consent. (Per Lord CAMPBELL, *Queen* v. *Millis*, 10 Cl. & Fin., 749, *et seq.*) That such a contract was not made between Singer and Mrs. Foster is, we think, satisfactorily shown by proof of the marriage of both Singer and Mrs. Foster with third persons soon after their separation from each other. We cannot raise a presumption of a contract of marriage when the direct consequence of so doing would be to involve both parties to it in the crime of bigamy. We are unable to accept the testimony of Mrs. Foster that she married her present husband under the belief that she had been divorced from Singer. It would be hard to believe, if uncontradicted; but it was contradicted by the witness's own conduct and declarations, especially by the certificate of her marriage with Foster under her maiden name of Sponsler, which states that it was her first marriage, and which she received and kept; and especially by her sworn statement made in the complaint in an action brought by her against Singer in 1864, after her marriage with Foster, to the effect that she began living with Singer in 1836 under the inducement of his promise that he would marry her as soon as he could obtain a divorce from his wife. That he never fulfilled that promise by any formal act, and that he persistently refused to do that which Mrs. Foster appears to have regarded as essential to its fulfillment, namely, yield his consent to a ceremonial marriage.

In the face of such evidence an actual marriage between Singer

and Mrs. Foster seems to us to be not only unproved, but extremely improbable.

The order appealed from must be affirmed, with costs

BARNARD, P. J., concurred.

Present — BARNARD, P. J., GILBERT and DYKMAN, JJ.

Order of surrogate affirmed, with costs.